It appears that both counsel are present for our next argued case, which is United States v. Gonzalez, and I believe Mr. Coffman is first up. Good morning, Your Honor. John Coffman, representing Victor Gonzalez, and thank the court for accepting oral argument. I'd like to discuss three things real quickly, the delay of the seizure, consent of the defendant, and finally the nature and the manner of the seizure under Terry and the reasonableness under the circumstances. What we have here is a traffic stop, very common, officer brings Mr. Gonzalez back to his car, starts filling out the paperwork, starts asking Mr. Gonzalez questions that are not associated with the traffic stop, i.e., where are you coming from, where are you going, finishes the paperwork, and then instead of handing the paperwork back, he goes to the passenger, passenger has no association with the vehicle, under the guise of he's going to ask the passenger for the insurance, and then he starts asking the passenger not about the insurance, but about, gee, where are you coming from, and he uses that as basis for his reasonable suspicion. I guess the major issue in the case is whether there is consent. Did the passenger look for that insurance during that conversation? I believe he did, but that's already after the driver had looked for the insurance and had failed to come up with it. So let's talk just a little bit about the consent. Here they are, it's a major highway, it's I-19, it's a highway between Tucson and Nogales, well-trafficked, and he comes back, gives the warning to Mr. Gonzalez, Mr. Gonzalez is allegedly free to go. Mr. Gonzalez unquestionably starts walking back to his vehicle, and all of a sudden, the officer starts asking him additional questions. Counsel, let me cut to the chase, if I may. The district court found the officer's testimony credible, that your client agreed without hesitation, both orally and in writing, to the search. Why are those findings clearly erroneous in your view? Because the consent is not voluntary. Because why? Because of multiple times in this country when a black person or a brown person is told or is allegedly free to go, and then he is stopped for further questioning, and he doesn't stop, he is then shot. That's happened over and over and over. But that, so it sounds like you're asking us to take judicial notice of that being, overriding the district court's factual finding that in this instance, your client readily agreed, both orally and in writing. Is there any other reason beyond racial profiling that you claim that there is a lack of consent? Because it has to be knowingly, voluntarily, and intelligently done. And if it's done as a matter of course, because the officer is making a demand that he return after he's walking away. But my problem is, you know, it's possible that the district court could have agreed with your client's version of things, but the court did not. And there's nothing in the findings that this was a demand or to, you know, so I'm looking for something that would compel us to say that the district court's findings are not supportable by what was in front of the court. Because otherwise, you're bound by those factual findings. You're in a trial court, if there's ever a contest between a defendant's statement and the cop's statement, 99 times out of 100 times, it's the cop's statement that's going to be accepted by the court. We accepted that, but we feel that, and that's why we didn't dispute it. We didn't dispute it from the magistrate's finding, and we didn't dispute it from the district court finding. But the magistrate's finding was that there was undue delay that contributed to the consent, and the district court didn't even consider the effect of calling him back after he is trying to leave in order to ask, answer questions that were not related to the traffic stop. And I think that's the most important thing, not related to the traffic stop. But even if they're not related, counsel, if the consent were knowing, intelligent, and voluntary, which I know you do not concede, but if the consent were valid, wouldn't that be permissible even if the questioning were unrelated to the stop? I know you don't concede the premise, but I'm asking you, if it is voluntary, knowing, and intelligent, isn't it still permissible to search? Yes, absolutely. No question about it. Absolutely. It sounds like, I'm sorry, go ahead, Judge. I was going to ask a different question. Counsel, are you arguing that your client at some point tried to withdraw his consent, or that he felt that he couldn't? That's not on the table, right? You're not making that argument. No, but take a look at the facts. As soon as he gives his consent, he is frisked, he is taken 200 feet away from his vehicle, and then when the officer finds the ammunition, he's handcuffed behind his back, sat on a curb near the highway, in a manner that is completely in violation of Terry, and the Ninth Circuit's rulings about this type of Terry seizure must be reasonable under the circumstances, and under the circumstances, the record is pretty clear that they didn't reflect a danger. They had been searched. It wasn't a dangerous area. These people had no record, and therefore, the manner and type of the Terry seizure was unlawful, which then would have constituted an illegal seizure and arrest, and anything that happened after that would have been illegal. But counsel, if there were separate consent to search, it's no longer a Terry stop, correct? Absolutely not, because after the Terry stop, he finds ammunition, which is concededly not illegal in the state of Arizona. It then becomes a Terry stop, once the ammunition is discovered. And after the ammunition is discovered, then they're placed in handcuffs. Then there is this unusual agreement between ATF and this highway patrolman to seize people until ATF can be present. I'd like to reserve the last two minutes for rebuttal. You certainly may do that. We'll hear next from the government. Ms. Woolidge? Thank you, and good morning, Your Honors. I'm Angela Woolridge, appearing on behalf of the United States in this matter. Your Honors, the district court did not clearly err by finding that the encounter between the officer and the defendant after the conclusion of the traffic stop was consensual. We review this using an objective standard based on the totality of the circumstances, and the totality of the circumstances all point towards and support the district court's finding of a consensual encounter. The defendant was walking back towards his car. There was nothing physical in his way to prevent him from continuing to walk to his car, get in his car, and drive off. There was nothing in front of his car. The trooper was actually in back of him, so he did not even back up. He could have just driven straight away. He had everything he needed at that point. He had just been given the written warning. He had his license and registration. There was nothing preventing him from leaving. And it is important to point out that the trooper asked the defendant, and his quote is in page 51 of the excerpts, Excuse me, Mr. Gonzalez, may I have a word with you? He did not give any sort of authoritarian demand, as the defendant claims. He did not use any language whatsoever to suggest to a reasonable person that they would not have the ability to say, no, I'd rather not, and continue on their way. The officer was the only law enforcement personnel present. There was nothing in his tone or demeanor. There's nothing on the record to suggest there's anything about his tone, his demeanor, his behavior. So once the ammunition is found, what's the nature of the seizure? Because at that point, he is placed in handcuffs and off to the side. Is that a Terry stop, or is that an arrest? At this point, that's not a conceptual encounter. I assume you're not claiming that he consented to be placed in handcuffs. That's correct, Your Honor. And once the ammunition was found, the defendant and his passenger were not free to leave. But at that point, the officer had reasonable suspicion to suspect a criminal offense. We have 10,000 rounds of ammunition, an exceedingly high amount. And we heard from every witness that was called by the government that this is a very high round. And in fact, the agent who responded to the scene, the federal agent to investigate, said that he has never encountered that much ammunition. Retrievable suspicion of what offense? Of smuggling ammunition, Your Honor, of smuggling ammunition, something that is illegal for export without a license. So it would be not just that he had the ammunition, but that there was reasonable suspicion to believe that it was going to be brought to Mexico. Correct, Your Honor. And the facts that add to that reasonable suspicion on top of the very high amount are the fact that this occurred at milepost 58, so 58 miles north of the Mexico border, south of Tucson. The defendant, once he finally said he'll be honest with the officer, admitted that they were driving to Nogales, Arizona, which is right on the border. They were heading south? Correct. They were heading south towards the border. And we have the fact that the officer had already observed nervous behavior during the traffic stop. The passenger and the driver, the defendant, gave conflicting stories about where they were coming from. First, the defendant said that they were coming from Tucson. The passenger then said they were coming from Nogales. The passenger changed his story and said coming from Phoenix. So now we have three different stories. And then when asked again, the defendant tells the officer, OK, now I'll be honest with you. So we have conflicting stories and we have the defendant admitting that he had lied to the officer. Was that last statement before or after the ammunition was found? That was before the ammunition was found, Your Honor, and it was before the conclusion of the traffic stop. That was while the traffic stop was still going on, before the officer had concluded his traffic enforcement action. And that is a finding not only supported by the record, but also the district court found this, and that was not clearly erroneous. Because we have the testimony of the officer that at all times during this questioning, he was still running the records checks. He was still getting the information needed, asking questions related to the traffic stop as well during that time. And also, again, looking for the insurance, because as he stated, the driver was not the owner of the vehicle. He said he had borrowed it from a friend. So it was completely reasonable for him. Did he at some point ripen into an arrest? Your Honor, the defendant actually was never arrested this day. Well, he was allowed to go, but he was detained for more than an hour, which probably might exceed the limits of the tariff stop. Your Honor, we would submit that he was detained for 39 minutes. That was from the time that the ammunition was found, and the officer immediately called ATF, and ATF arrived on the scene. And we would submit that that is reasonable, and the district court found that it was reasonable, and that this was not clear error, that under the circumstances where the officer acted diligently and called ATF right away, when the officer did not have jurisdiction as a state officer to investigate what he believed was a federal ammunition smuggling offense, to call ATF the agents that are familiar with this type of investigation, based on what he found. Counsel, could I ask you another timing question before you're done? And that is, how much time elapsed between the initial stop and the signing of the consent form to search? I believe that the officer testified, and he had to estimate that the traffic stop lasted from 5 to 10 minutes. Then, upon conclusion of the traffic stop, an additional approximately two minutes before the defendant gave his consent. And that, I know the 5 to 10 minute estimate is on page 32 of the excerpts, and I believe that he testified that the consent was rather immediate after he asked him two additional questions. In fact, I think the first question asked was, would it be okay if I searched your vehicle? And that the consent form was signed immediately after. So we have, at the high side, about 12 minutes. We also have the officer testifying that that is about the average time for these types of traffic stops, and in fact, they can take up to about 15 minutes to complete all of the paperwork for a mandatory insurance suspension warning like happened in this case. And so the traffic stop itself, the timing of the traffic stop was reasonable. It was never unnecessarily prolonged to investigate anything else. Even when the officer was asking questions about the direction of travel, which we would submit are in fact related to the traffic stop, but in any event, there was no unnecessary delay. This is while the records were being checked, while the warning was being printed, during all of these other things that are necessary and inherent in a typical traffic stop. So the traffic stop concluded, as the district court found, which was not a clearly erroneous finding, and the defendant has failed to show that, that the traffic stop did conclude when the defendant was given the written warning and was walking back to his car and he was free to leave. And the district court found, and it's finding certainly was not clearly erroneous, that the defendant voluntarily gave his consent not only to answer additional questions of the officer, but also to the consent to search his vehicle. There is just simply nothing in the record to suggest otherwise. And the defendant has not met that burden in this case. Can I ask you a question about why was the officer questioning him about photos when he's being transported long after? I believe that was after he was arrested about a month later. This was a seven co-defendant case, Your Honor. There were a number of additional suspects that in the time period between the defendant's arrest, between the defendant's, the traffic stop and the eventual arrest, that officers continued their investigation. They had, based on other statements of other co-conspirators, other individuals involved, they had identified some additional individuals they believed the defendant was working for. And Your Honor, you bring up an important point. The defendant had expressed a willingness to cooperate with the officers. Well, there was the one time he voluntarily spoke, but the other time they initiated by showing him the photos with no Miranda warnings. Am I reading that correctly? That is correct, Your Honor. And the defendant does not challenge that on appeal. But I would point out that the district court, again, did not clearly err in finding that that was voluntary, given especially the defendant's previous expression to assist in the investigation. And the defendant himself testified at the hearing that he wanted to help them because he believed it could potentially help him. He wanted to help himself with the criminal charges he was facing and possibly get a better disposition. But I would point out that throughout the encounter with law enforcement, not only the initial officer conducting the traffic stop, but with the agents upon his arrest a month later during his transportation, he was always cooperative. He never tried to withdraw consent or stop talking. In fact, the day of his arrest, he spontaneously started talking with the officers before really they could get a word in. Thank you, counsel. You've exceeded your time. And as you pointed out, that later is not a part of the matter on appeal. So, Mr. Kaufman, you have some rebuttal time remaining. Yes, Your Honor. Well, let me give you a little bit better idea of the timeline. The stop is at 1.10. The consent is signed just after 1.30. The interrogation by the ATF officer starts at 2.09. So that's their 39 minutes. But altogether, over an hour. The officer testifies that there's nothing illegal about the defendant's possession of ammunition. He testified that neither Gonzalez nor Diaz had prior records, presented any danger. They had no weapons, were cooperative, and neither Gonzalez or Diaz exposed any kind of threat to him. Yet, they're removed from the area. They're handcuffed behind their back. And that's unreasonable. And that would constitute an arrest. And part of our argument is that if it's an unreasonable seizure, then the arrest occurs at the time of the unreasonable seizure. And they have to have probable cause at that time. Counsel, you're emphasizing the fact that possession is not illegal. But what about your opposing counsels pointing out that there was a suspicion of a federal smuggling violation? Well, what can I say about that? If any ammunition is found, is that suspicion of smuggling? He has a right to possess that ammunition. There's nothing illegal about it. He's going to Nogales, Arizona. And he tells them, he tells the federal agent that he's going to Nogales, Arizona. He's not going to Nogales, Sonora or in Mexico. So any indication that he's committing something illegal by merely possessing it is not correct. So that's my time. I thank the court for taking the time and listening to my oral argument. And I hope you resolve this case in favor of Mr. Gonzalez. Thank you very much. The case just argued is submitted, and we appreciate the arguments from both counsels.
judges: GRABER, COLLINS, Groves